# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA A. CARLSTROM, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Civil Action No. 2:11-cv-0155 |
| vs. | )<br>) Judge Mark R. Hornak |
| RESEARCH PHARMACEUTICAL<br>SERVICES, INC., | )<br>)<br>) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

**Mark R. Hornak, United States District Judge**

This is a Title VII case in which the Plaintiff alleges that her employment was terminated because of her gender and her pregnancy. Plaintiff's work required business travel. The principal argument advanced by the Defendant for the lawfulness of its actions was that the main contact at its client Allergan (for which Plaintiff had account responsibility), Ms. Barbara Snader, directed that the Plaintiff be removed from the account because of her unavailability to service out-of-town locations due to her physical limitations related to travel. While a number of defenses and arguments are advanced by Defendant to shield its actions from liability, its main contention is that its legitimate, non-discriminatory reason for its employment actions was this directive from Ms. Snader.

The parties presented oral argument on the Defendant's Motion for Summary Judgment on April 24, 2012. At the conclusion of the argument, the Court denied that motion for reasons which were detailed on the record. In support of its position, the Defendant filed a Reply Brief a

1

few days beforehand, including a declaration of Ms. Snader ("Declaration"), detailing her directions to Defendant regarding Plaintiff's assignment to the Allergan account.[1] The declaration came four and one-half months after discovery closed on December 9, 2011. The location and identity of Ms. Snader were not revealed by Defendant in its initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(i), nor in response to an interrogatory under Fed. R. Civ. P. 33 (to which Defendant nonetheless objected on vagueness grounds) that in essence asked for the identity of any person with knowledge of facts bearing on the claims or defenses of the parties.

At oral argument, counsel for the parties stipulated that over the course of discovery, the Plaintiff's counsel had asked the Defendant's counsel if he knew of Ms. Snader's whereabouts. Defendant's counsel apparently told Plaintiff's counsel that he did not, but would advise Plaintiff's counsel if he learned of them. Defendant did not supplement its initial disclosures or interrogatory responses, as required by Fed. R. Civ. P. 26(e) to provide the contact information for Ms. Snader. Defense counsel did not advise counsel for Plaintiff that Defendant had learned how to contact her.

The Declaration was filed on April 19, 2012. It was dated and executed on February 23, 2012,[2] some fifty-six (56) days before its filing. When asked by the Court to explain where the Declaration had been for those eight (8) weeks, Defendant's counsel stated that it had been in his file (which turned out to not be accurate, in that counsel now states that the Defendant itself was in possession of the Declaration unbeknownst to Defendant's counsel). Defendant's counsel advised the Court that: (1) the Defendant itself had undertaken the task of finding Ms. Snader;

---

[1] The Plaintiff then moved to strike that declaration, and to preclude Defendant from using Ms. Snader's testimony in all proceedings. ECF No. 46 (April 23, 2012)

[2] This was nine (9) days after Defendant filed its Motion for Summary Judgment and thirty-two (32) days before Plaintiff filed her response. See ECF Nos. 24, 30. The Defendant also acknowledges that it had Ms. Snader's contact information as of February 9, 2012 (five days before it filed its summary judgment motion).

(2) Defendant had not advised him that the hunt for Ms. Snader had been successful until it produced the Declaration; and (3) the Defendant did not advise counsel of Ms. Snader's location until April 24, 2012.

At oral argument, this Court ruled that due to the late and facially unexplained and inexplicable appearance of the Declaration, it would not be considered in ruling on the summary judgment motion. In light of the motion to strike the Declaration and bar testimony of Ms. Snader at trial, it also issued an order to show cause (ECF No. 50) pursuant to Fed. R. Civ. P. 26(e)(1)(a), 37(c)(1) and 56(h) as to why any one of several actions should not be taken, namely (a) barring Ms. Snader from testifying on behalf of Defendant; (b) barring the use of any otherwise admissible out-of-court statements of Ms. Snader by Defendant; or (c) at Plaintiff's election, ordering the deposition of Ms. Snader at the convenience of the Plaintiff and at the expense of the Defendant.

Each party has now responded to that Order. The essence of the Defendant's position is that this was not an intentional act by Defendant's trial counsel, that Defendant did not seek to hide Ms. Snader as a witness (as demonstrated by the ultimate submission of the Declaration), that there was no prejudice to Plaintiff, as even she had known from "day one" that Ms. Snader was a witness with relevant information. According to Defendant, this entire situation could now be set straight by allowing Plaintiff to depose Ms. Snader pursuant to a subpoena and at Plaintiff's expense. In short, Defendant's position is a lengthy invocation of the "no harm, no foul" rule. (ECF No. 52)

In response, Plaintiff contends that she has in fact been prejudiced by what she describes as a willful and malicious concealment of Ms. Snader until the eleventh hour by the Defendant.[3]

---

[3] Given the lack of explanation by Defendant, it is difficult to determine whether Defendant had some level of scienter as alleged by Plaintiff. What can be discerned is that the Defendant had Ms. Snader's contact information

3

She avers that had Ms. Snader been found earlier, her deposition would have been phased into the overall discovery and that deposing her now might require the resumption of other depositions. Finally, Plaintiff argues that the applicable rules provide the remedy here -- the preclusion of testimony -- and those rules should be applied with full force.

With the benefit of learning Plaintiff's position, Defendant next suggested that the correct remedy was that Ms. Snader not testify at trial and that no party refer to her or conversations with her at trial, but that the Defendant nonetheless be permitted to tell the jury that Allergan advised the Defendant that it (Allergan) was requesting that Plaintiff be removed from its account and that Allergan had previously excused Plaintiff from travel-related work on a temporary basis. According to this proposed resolution, there would be no deposition of Ms. Snader, and each party would bear its own fees and costs. (ECF No. 54) Plaintiff was given the opportunity to state whether she consented to an order to that effect, and she stated that she did not so consent. (ECF No. 55) The matter is now ripe for disposition.

The days of surprise attacks in civil litigation ended long ago, and Fed. R. Civ. P. 26 and 37 provide that parties are to disclose to one another the contact information for known witnesses, are to timely supplement those responses and disclosures, and failing to do so, generally are to be barred from using previously undisclosed witnesses at trial. In addition, when an interrogatory is asked as to witness identifiers, such interrogatories are rarely, if ever, "vague" or "ambiguous" as Defendant claimed here and, in any event, they too are subject to a supplementation duty.

---

before its summary judgment motion was filed, had the Declaration a few days after it filed that motion and well before Plaintiff's response was due, yet sat on it. Defendant's characterizations of this being only an oversight rings hollow. Likewise, the Defendant's assertion that it had inhibitions about contacting Allergan to obtain the contact information for the person upon whose directives its central defense relies is odd to say the least.

The entire point of these basic civil discovery principles is for each side to put their important factual cards on the table, face up, early in the game. This not only fosters the "just, speedy and inexpensive" disposition of each civil action, Fed. R. Civ. P. 1, but allows each side to size up the case against them. It also allows the parties to effectively consider settlement, marshal the resources to be devoted to the case, and to shape the pretrial process -- a process that our civil rules places principally in the trusted hands of trial counsel. The ability of counsel, the Court, and the parties to count on the completeness, reliability, and accuracy of the information provided in discovery is the essential lubricant for the just and efficient operation of the gears of civil litigation.

At the same time, the focus of this Court's work is not the sanctioning of counsel or their clients. It is not our goal to shift the core of civil litigation from the zealous representation of clients and advocacy of their interests (and the decision of important matters on the merits) to a process that chills those efforts by imposing remedies for discovery miscues or misbehavior that are disproportionate to the specific problem to be repaired. In many ways, the positions of the parties on this significant and singular pretrial issue mirror the approach that they have apparently each taken from time to time throughout this litigation -- that the Defendant's actions are outrageously inappropriate on the one hand and that the Defendant could not possibly be in the wrong on the other. They both miss the mark.

There has been no logical or understandable explanation proffered for why the Defendant apparently obtained the Declaration of someone it considered a very important witness to its case, yet seemingly did not tell either the Plaintiff's counsel, or even its own lawyer, that it had done so or how it went about getting it. How and why that all happened the way it did has not been explained on the record, nor is a plausible explanation self-evident. It seems as though

every lawyer on each side knew (or at least thought) that Ms. Snader was going to be an important defense witness who had material testimony. Yet once she was found by Defendant, it kept that to itself for two (2) months. That information should have been timely provided to Plaintiff's counsel. It was not.[4]

In determining what should now be done, the Court believes that it is important to keep some key calendar-based facts in mind. By the date of the Declaration (and assuming Ms. Snader had been found a reasonable time before that date), discovery was in fact closed when Ms. Snader was found and the summary judgment process was just beginning. At that point, Defendant should have disclosed Ms. Snader to Plaintiff's counsel (before Plaintiff's summary judgment response was filed) and should have filed the Declaration at that time if it was to be used to support the summary judgment motion. Plaintiff could have then moved for authority from this Court to reopen discovery to depose Ms. Snader. Fed. R. Civ. P. 56(d). It is also possible that, at that point, Defendant itself might have wanted to obtain and preserve her oral testimony to avoid the risk that her out-of-court statements (if related by Defendant's other witnesses) would be barred at trial as hearsay without an exception allowing their admission. See Fed. R. Evid. 801, 803.

While the text of Fed. R. Civ. P. 37(c)(1) itself certainly authorizes (if not favors) the preclusion of witnesses and testimony in this situation, our Court of Appeals has directed that the district courts, in shaping a remedy, are to assess the relative prejudice to the parties from non-

---

[4] Defendant argues vigorously that because Ms. Snader was known to Plaintiff's counsel early on, he could have, and should have, tracked her down by a subpoena to Defendant's client Allergan and then deposed her. While there is some facial appeal to that argument, Defendant's counsel had advised Plaintiff's counsel that Defendant had not located her itself and did not know how to do so. Defendant now states that it was reluctant to contact Allergan to obtain that information. Thus, it is not at all likely that Plaintiff would have had any greater luck than Defendant in finding this important manager at one of Defendant's own principal business relationships. In any event, this argument diverts focus away from the fact that Defendant ultimately thought the need for Ms. Snader's testimony was significant, significant enough to find her, and significant enough to submit the Declaration in support of its summary judgment motion (albeit long after it had found her), yet did not disclose her to Plaintiff.

6

disclosure/supplementation, the availability of other effective remedies to cure any prejudice, the disruption caused by late disclosure to trial or other court proceedings, and the bad faith or willfulness of the offending party. Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000). The best course, absent meaningful prejudice to a party, is for important legal matters such as this civil action to be resolved on the merits, rather than by the impact of the application of an exclusionary sanction. Our Court of Appeals' directive seeks to fulfill that mission, consistent with the purpose of Fed. R. Civ. P. 37(c)(1). The duty of this Court now is to craft a remedy that is precisely tailored to the specific situation presented, and to do so in a way that meets the twin goals of resolving disputes on the merits while at the same time allocating the costs of the remedy in a just manner.

Defendant's actions are neither explainable, excusable, nor substantially justified. While there is no record evidence of affirmative bad faith, the facts known and recited here demonstrate a willful disregard for Defendant's discovery obligations. At the same time, trial of this action will not occur until at least 90 to 120 days from now. The parties now know where Ms. Snader is, and how to contact her. It would appear from the fact of the Declaration, which Ms. Snader provided at the request of the Defendant, that it is not impossible for Defendant to arrange for her deposition. Thus, while Defendant's actions are not completely "harmless,"[5] that is so only because the harm they have caused can be remedied short of the preclusion of evidence.

In balancing the Defendant's obligation for the production of timely and updated information regarding an obvious defense witness (an obligation Defendant failed to fulfill) with the strong

---

[5] The Court has searched the Defendant's papers with great care yet can glean no justification, let alone a substantial one, for its finding an important witness, taking her declaration, and then sitting on it for eight (8) weeks. Defendant's actions now require "catch up" discovery, they injected a collateral issue into the summary judgment and pretrial proceedings, and they raised questions regarding the conduct of Defendant and its counsel. They have, by any measure, materially impacted the litigation process in this case.

preference that matters be resolved on the merits and that all admissible evidence be acquired and received if doing so does not prejudice the substantial rights of a party, the Court finds and concludes that the following remedy should be ordered as a consequence of the Defendant's actions:

1. Testimony at trial from Ms. Snader will not be precluded by Fed. R. Civ. P. 37(c)(1) from being offered by either party. If within ten (10) days of the date of this Order, Plaintiff advises Defendant that she desires to depose Ms. Snader, Defendant shall make all arrangements necessary for Ms. Snader to appear for an oral deposition within the next thirty (30) days at its sole expense and at a date and time reasonably convenient to Plaintiff. If that deposition is to take place in Pittsburgh, all expenses attendant to Ms. Snader's transportation, meals, lodging, and any other reasonable expenses, shall be the sole responsibility of Defendant. If Ms. Snader declines to travel to Pittsburgh, or will only appear elsewhere subject to a subpoena, then Defendant shall cause her to be subpoenaed to be deposed at a suitable location as permitted by actual Rule 45, at its sole expense. Defendant shall then bear all actual and reasonable travel, meals, lodging and related expenses for one (1) counsel for Plaintiff to attend that deposition, allowing for travel the day before the deposition.

2. All court reporter costs of the Snader deposition, including the costs of one (1) condensed and one (1) electronic copy of the transcript and exhibits for Plaintiff shall be at the sole expense of the Defendant.

3. Defendant shall be responsible for the payment of itemized and documented actual and reasonable counsel fees of Plaintiff's counsel for attendance at the Snader deposition and for reasonable preparation attendant thereto, not to exceed a cumulative total of eight (8) hours of time at his or her standard billed hourly rate.

4. In all other respects related to this matter, each party shall bear its own costs and expenses unless otherwise ordered by the Court.

The Court finds and concludes that this remedy most closely puts the parties in the position that they would have been in had Defendant not failed to comply with its discovery obligations. It limits or avoids undue prejudice to any party, reasonably and equitably allocates the costs and expenses of permitting significantly tardy discovery that would occur now as a

consequence of that failure, properly balances the equities between the parties in terms of who should bear the expenses of that remedy, and acts as a sanction for Defendant's discovery conduct that is sufficient, but not greater than necessary.

An appropriate order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: June 11, 2012

cc:     All counsel of record